(123 So. 308)

No. 29287.

## SUCCESSION OF RICHTER v. FABACHER et al.

Nov. 26, 1928.    On the Merits, May 20, 1929.
Rehearing Denied June 17, 1929.

M. C. Scharff, of New Orleans, for appellants.

George Sladovich, of New Orleans, for appellee.

THOMPSON, J. The motion to dismiss the appeal rests on two grounds, neither of which can be sustained under any theory of law, precedent, or sound reason.

The suit is for damages for the wrongful conversion of a Studebaker automobile alleged to belong to the succession of Richter.

The amount of damages claimed is $5,447, plus $250 per month for an indefinite period.

The case was put at issue by answer and tried before a jury, which rendered a verdict in favor of plaintiff for $947, representing an equity interest in the automobile.

The verdict was rendered on February 6, 1928, and a judgment responsive thereto was signed on February 24, 1928.

On March 1st a suspensive appeal was granted defendant in open court, and on the following day an appeal bond for $2,000 was filed.

The appeal was made returnable on April 27th, and the transcript was filed in this court on April 26th.

■ The first ground of the motion is that the order of appeal and the bond filed thereunder came too late to operate or to have the effect of a suspensive appeal. As we have stated, the judgment was signed on February 24th, the appeal was granted on the 1st of March and the bond was filed on the 2d. Therefore, allowing 29 days for February, and excluding the day on which the judgment was signed, it clearly appears that the appeal was perfected within the delay allowed for a suspensive appeal.

The appellant contends, however, that the delay began to run from the date of the verdict of the jury.

■ The contention is without merit. An appellate court has the right to review the verdict of a jury on appeal from a judgment based on such verdict, but the verdict of a jury can never form the basis of an appeal in the absence of a judgment rendered and signed. The delay runs from the date of the judgment.

The second ground of the motion is that the bond is not such as is required by law, in that the suit is for more than $5,000 while the bond is for only $2,000.

The fallacy of the position of appellant is in assuming that the amount of a suspensive

appeal bond should be one-half over and above the amount sued for.

██ In all cases in which a party desires to suspensively appeal from a money judgment, he may do so on executing a bond equal to the amount of the judgment plus one-half thereof. The bond here greatly exceeds the amount required under the law, but this fact furnishes no room for complaint by appellee and no reason for dismissing the appeal.

The motion to dismiss is denied.

## On the Merits.

OVERTON, J. ██ This is a suit to recover judgment for $2,197, the value of a Studebaker automobile, and $5,000 for the rent thereof from March 18, 1925, to December 11, 1926. The suit was brought by Mrs. W. B. Richter, as administratrix of the succession of her deceased husband, William B. Richter.

Plaintiff alleges that her husband purchased the automobile from the Capital City Auto Company on January 8, 1925, and thereafter had exclusive possession of it until his death about two months later. She also alleges that a few days after his death, at the solicitation of the defendant Fabacher, she leased him the automobile for $250 a month, and the assumption of the indebtedness against the car, amounting to $875, which he agreed to pay, as the installments thereof fell due. She also alleges that Fabacher, in conjunction with Arthur Mason, fraudulently disposed of the car and appropriated the proceeds. Mason was made a party defendant, but he does not appear in this appeal, nor does it appear that any judgment was rendered against him.

Fabacher's defense to the case is that he did not lease the automobile from the administratrix; that Richter, the deceased, was in his employ, and that the automobile was purchased by him in Richter's name, in order to shield its ownership for the time being.

The case was tried by jury. A verdict was returned in favor of plaintiff for $927, representing the equity of the succession in the automobile. A motion for a new trial was filed, and, while the trial judge thought that the verdict was incorrect, he overruled the motion.

Fabacher was engaged in a business, which is not sanctioned by either state or federal law, and the deceased, Richter, was one of a number of his employees. Richter unquestionably had the possession of the Studebaker car from the time of its purchase up to the time of his death two months later. His widow testified that her husband bought the automobile, trading in a comparatively new Ford sedan, as part payment, and agreeing to pay the balance in installments of $125 a month. The deed of sale and the chattel mortgage granted name Richter as the vendee and mortgagor. The notes given for the deferred payments are signed by Richter, two of which the widow testified were paid by her and her husband during his lifetime. Richter's widow also testified that her husband purchased for cash the Ford sedan that was given in trade, as part payment for the Studebaker, and she is corroborated to this extent by the vendor of the Ford sedan. Mrs. Richter also testified that a few days after her husband's death Fabacher approached her for the purpose of renting the car, and offered her $10 a day rent, and agreed to pay the installments of $125 a month on the purchase price of the car, and to give her $25 a week, presumably, though she does not so say, on the salary which she claims that Fabacher owed her husband.

Fabacher testified that the Studebaker automobile was purchased by him, through Richter, for use in his business by the latter, that he furnished the money for the first cash payment made, which was small, and that he purchased, and was the owner of, the Ford sedan

that was traded in as part payment of the Studebaker car, and that it was traded in by Richter under his (Fabacher's) instructions. He also testified that he paid through Richter the first two installment notes, and that, after Richter's death, following which, executory process was issued against the car, he paid the remaining notes representing the purchase price, concerning which there seems to be no question. He also testified that he purchased the Ford sedan, that was traded in, and the Studebaker car, in Richter's name for his own protection, and that during that period such was his practice in furnishing his employees with cars. He also testified that he was not indebted to Richter at the time of the latter's death, and did not pay his widow $25 a week on salary due her husband, but did give her, because of her husband's faithfulness to him, for the support of herself and children, $40 a week for about eight months, at the end of which time he felt that he could no longer continue to do so.

Fabacher placed several witnesses on the stand to corroborate his evidence. One of these witnesses, who was the agent of the company that insured the Studebaker, testified that the car was insured at the request of Fabacher, and that Fabacher paid the premium. Another of these witnesses—the sales agent of the vendor of the Studebaker car—testified to facts tending to show that Fabacher was the real vendee of the car, and still another of these witnesses testified to facts tending to show that Richter stated at the time the Studebaker was purchased that Fabacher was the owner of the Ford sedan.

It seems to us that it is highly improbable that Fabacher, who was apparently in position to buy an automobile, would agree to pay $10 a day for the use of one, and, in addition, pay the notes, given for the purchase price thereof as they matured. The very fact that he agreed to pay the notes, if true, shows that he contemplated using the automobile for some time. In these circumstances he would have evidently found it manifestly to his advantage to have purchased an automobile. He could have done so at a far less sum per month. As to the ownership of the car, we think that the evidence clearly preponderates in favor of Fabacher.

While we dislike to interfere with the verdicts of juries on questions of fact, yet in this instance it should be recalled that the trial judge in reality disapproved of the verdict of the jury, and moreover we think that the verdict is clearly erroneous.

For these reasons, the verdict and the judgment appealed from are set aside, and judgment is now rendered rejecting plaintiff's demand, at its cost in both courts.

O'NIELL, C. J., absent, takes no part.